Saverio **PUGLIESE**, Michael J. Mieves, Antonio Saladino, and Stephen Matolyak, Plaintiffs,

v.

**PUKKA DEVELOPMENT, INC., Defendant.**

No. 07–14040–CIV–LYNCH.

United States District Court, S.D. Florida.

Oct. 4, 2007.

Robert M. Weinberger, Cohen Norris Scherer Weinberger & Wolmer, North Palm Beach, FL, for Plaintiffs.

Barry A. Mandelkorn, Paul Bernard Ranis, Ruden McClosky Smith Schuster & Russell, Fort Lauderdale, FL, for Defendant.

## ORDER ON DEFENDANT'S MOTION FOR FINAL SUMMARY JUDGMENT (DE 32) AND PLAINTIFFS' CROSS–MOTION FOR PARTIAL SUMMARY JUDGMENT (DE 37)

FRANK J. LYNCH, Jr., United States Magistrate Judge.

**THIS CAUSE** comes before this Court upon the above Motions. Having reviewed the Motions, as well as the Response and Reply filed with respect to the Cross–Motion, this Court finds as follows:

■ 1. The Plaintiffs paid deposits and entered into contracts with the Defendant for the purchase of condominium units at the Defendant's Ocean Bay Villas development. The Plaintiffs subsequently changed course, however, sending the Defendant Notices of Revocation and invoking their right to do so under 15 U.S.C. § 1703(d) for the Defendant's failure to include certain information in their purchase contracts. The Defendant denied their requests, claiming exemption from § 1703(d)'s requirements.

2. In both their summary judgment motions and Joint Status Report (DE 21), the parties clarify that the instant dispute is governed by only two issues: one question of fact regarding the number of units offered for sale (which is undisputed) and one legal question regarding the Defendant's claim of exemption (which is now before this Court to answer). Since the case turns solely on statutory construction, it lends itself to judgment as a matter of law under Rule 56(c), Fed.R.Civ.P. *See, e.g., Swanson v. Worley*, 490 F.3d 894, 899 (11th Cir.2007), *Green v. Holland*, 480 F.3d 1216, 1222 (11th Cir.2007), *Ellinger v. U.S.*, 470 F.3d 1325, 1332 (11th Cir.2006). Furthermore the Plaintiffs confirm at p. 2 of their Cross–Motion that the resolution of the exemption dispute will determine in whose favor summary judgment should be entered, with no other issues left for the Court to decide. This Court will limit its review accordingly and will assume that there are no other issues affecting the contracts' enforcement or revocation.

■ 3. In construing and applying a statute, a court should begin with the statute's plain language and give effect to all of its provisions. *See Kehoe v. Fid. Fed. Bank*, 421 F.3d 1209, 1212 (11th Cir.2005) and *Idahoan Fresh v. Advantage Produce,*

*Inc.*, 157 F.3d 197, 202 (3rd Cir.1998). Other principles of statutory construction are also helpful here. Where two statutes are interrelated, they should be construed together. *See In re Kandekore*, 140 Fed. Appx. 848, 849 (11th Cir.2005) (citing *In re Bateman*, 331 F.3d 821 (11th Cir.2003)). Exceptions or provisos to general rules should be construed narrowly. *See Samara Dev. Corp. v. Marlow*, 556 So.2d 1097, 1100–01 (Fla.1990).

4. The property contracts at issue in this case are governed by the Interstate Land Sales Full Disclosure Act ("ILSA"), an Act designed to discourage fraud by keeping buyers informed through rigorous disclosure requirements. *See Law v. Royal Palm Beach Colony, Inc.*, 578 F.2d 98 (5th Cir.1978). The Act imposes various requirements on the sale or lease of lots (15 U.S.C. § 1703), registration of subdivisions (15 U.S.C. § 1703), and statements and property reports (15 U.S.C. §§ 1705–1707). There are exemptions to the Act, and these exemptions are grouped together at 15 U.S.C. § 1702.

5. Turning to the statute in question, the Plaintiffs contend that their respective purchase contracts lacked information, set out at § 1703(d)(1)-(3), concerning property description, means for curing buyer default, and procedures for handling seller default. The inclusion of this information is not mandatory. The seller instead is given an incentive: should the seller choose to exclude it, the buyer is permitted to revoke the purchase contract for up to two years after its signing. However § 1703(d) does not apply to all property contracts. It only applies to those "not exempt under section 1702 of this title."

6. Therefore, in order to evaluate the Defendant's claim of exemption, one must turn to § 1702. The exemptions set out therein are divided into two groups. Subsection 1702(a), which exempts one from "the provisions of this chapter", contains the "full" exemptions. A "sale or lease of lots in a subdivision containing less than twenty-five lots", for example, would be exempt from the entire Act pursuant to 15 U.S.C. § 1702(a)(1). Subsection 1702(b) contains the "partial" exemptions, and they exempt one from "the provisions requiring registration and disclosure (*as specified in* section 1703(a)(1) of this title and sections 1704 through 1707 of this title)". (emphasis added). A "sale or lease of lots in a subdivision containing fewer than one hundred lots", for example, would be exempt from these certain specified provisions pursuant to 15 U.S.C. § 1702(b)(1).

7. The Defendant's condominium development undisputably contains fewer than 100 units for sale, and consequently the Defendant qualifies for the § 1702(b)(1) exemption. (The Defendant claims no other exemptions.) The Defendant therefore may rightfully disregard the requirements of § 1703(a)(1) and §§ 1704–1707, but none of these provisions are at issue in this case. What is at issue here is § 1703(d), an entirely different provision not included in § 1702(b)'s list. This means that under the statutes' plain language, § 1703(d) still applies to the Defendant.

8. The Defendant construes the statute differently: so long as a seller meets any one of § 1702's various exemptions, be it full or partial, it qualifies as "exempt under section 1702 of this title". This is because, as the Defendant reasons, "nothing in Section 1703(d) distinguishes between the 'full statutory' exemptions of Section 1702(a) and the 'partial statutory' exemptions of Section 1702(b)." The Defendant presents this to be the plain meaning of § 1703(d), but because the Defendant does not apply the two statutes jointly, there is a critical flaw in its construction. Section 1703(d) does not distinguish between the two kinds of exemp-

tions because there is no need for it to do so; § 1702 already serves that purpose. All that § 1703(d) does is simply to refer the reader to where the exemptions are found. The principle of *ejusdem generis,* which reduces the scope of an otherwise broad term to account for any limiting qualifiers placed upon it, provides another perspective on this point. *Cf. Snapp v. Unlimited Concepts, Inc.,* 208 F.3d 928, 934 (11th Cir.2000). Here, § 1702(b)(1), the exemption under which the Defendant is traveling, clearly limits its scope to specified, unrelated provisions. Section 1703(d) therefore cannot give the exemption greater scope and effect than what § 1702 gives it.

■ 9. The Defendant relies on another tool of statutory construction, one that derives meaning from differences in the expression of related terms. All of § 1703's subsections use the qualifying clause "not exempt under section 1702 of this title". The one exception is § 1703(a)(2) which makes the more specific reference to "section 1702 *(a)* of this title". Since Congress was more specific there, the Defendant extrapolates that Congress must have intended § 1703(d)'s exemption reference to be all-inclusive and not subject to any of the exemption statute's restrictions. The true purpose behind this particular difference is not readily apparent. Section 1703(a)(2)'s more specific reference simply may be the complement to § 1702(b), clarifying that while § 1703(a)(1) is subject to the partial exemptions, § 1703(a)(2) is not and is subject only to the full exemptions. In any event the Defendant's argument is unpersuasive because it leaves the dispositive point unaddressed. Section 1702(b) expressly limits itself to certain, specified provisions, and none of § 1703's language amends that. While differences in wording can inform the interpretation of a statute, *see, e.g., Shotz v. City of Plantation,* 344 F.3d 1161, 1168 (11th Cir.2003) (comparing the different ways the ADA describes covered persons), such is not the case here.

10. In short this Court finds the specific limitations placed on § 1702(b)'s reach to be an important qualifier whose express terms should not be altered by an all-inclusive reading of § 1703(d)'s exemption reference. The Defendant's reading, which greatly expands the availability of developer exemptions, not only yields a result contrary to the exemption statute's plain language, but it also disserves the Act's remedial purpose of protecting the buying public, *see Samara,* 556 So.2d at 1100 (noting "that [ILSA] was intended to protect the public, and as such should be liberally construed in favor of the public"). Furthermore, in emphasizing the exemptions, the Defendant shifts the focus away from the Act's otherwise broad coverage and strict requirements, *see Grove Towers, Inc. v. Lopez,* 467 So.2d 358 (Fla. 3rd DCA 1985).

■ 11. The Defendant cites to an opinion letter in further support of its position. That letter, authored by Ivy Jackson, the Director of the RESPA and Interstate Land Sales Office, was written to answer an inquiry "on the relationship of 15 U.S.C. § 1702(b)(1) to 15 U.S.C. § 1703", in essence the very same issue now before this Court. The Director stated that "[t]he requirements of ... § 1703(d) do not apply to the sale or lease of lots that are exempt under the 100 lots provision of 15 U.S.C. § 1702(b)(1) (or any other exemption of § 1702)", the same interpretation the Defendant is advancing. Because the U.S. Dept. of Housing and Urban Development ("HUD") is responsible for the Act's administration, *see* 15 U.S.C. § 1715, the Defendant contends that the opinion letter should be "entitled to great weight and deference." (Of note, the instant Defendant did not solicit the opinion letter.)

12. The *Samara* court, cited above, was also called to apply HUD commentary to an ILSA question. In *Samara* the buyer sought to rescind his purchase contract with the Samara Development Corp. to which the developer responded by claiming a full exemption from the Act and citing a favorable HUD interpretation. That agency interpretation was not issued in the form of an opinion letter, as here, but rather came from formally promulgated Guidelines published in the Federal Register. However, despite its formal promulgation and the usual deference accorded agency interpretations, the Florida Supreme Court still eschewed from reading it as strictly as the developer wanted. Instead the Court read HUD's commentary more expansively in order to better realize ILSA's remedial purposes. *Samara* therefore makes clear that full agency deference is not always warranted, and because the instant opinion letter is not a formally promulgated interpretation or regulation, there is less reason to be bound by it.

13. In addition to the one opinion letter, the Defendant does cite to some formally promulgated agency guidelines, such as 24 C.F.R. § 1710.6 concerning the 100-lot exemption, and other information from HUD's website. However this information, which essentially restates in general terms what the statute already requires, provides no real guidance to resolving the specific issue before this Court. This of course brings the Court's inquiry back around to the language of the two governing statutes. It is the statutes' unambiguous, plain language—and not the opinion letter—that binds this Court, especially since the statutes' language precisely answers the question at hand. *See Bergen v. Comm'r of Social Security*, 454 F.3d 1273, 1275 (11th Cir.2006). This is the second flaw with the Defendant's reliance on the opinion letter.

14. There is no case law addressing this issue, save for one. The final element of the Defendant's argument relies on the opinion rendered in the case of *Mayersdorf v. Paramount Boynton, LLC*, 910 So.2d 887 (Fla. 4th DCA 2005). In that case the Fourth District Court of Appeal agreed with the interpretation the Defendant now advances. This Court has taken *Mayersdorf* into consideration, and the case does support the Defendant's position. However, it, like the opinion letter, does not present binding authority, and because this Court reaches a different construction of the governing statutes, this Court does not find it to be persuasive. *Cf. Snapp*, 208 F.3d at 933 (construing a statute differently than another, sister court).

## CONCLUSION

This Court finds 15 U.S.C. § 1703(d) to apply to the instant purchase contracts even though the Defendant qualifies for another, unrelated exemption. As such, and taking the parties' representations that the contracts do not comply with § 1703(d) to be true, the Plaintiffs may invoke their right to revocation and may recover their deposits. Summary judgment therefore should be entered in the Plaintiffs' favor.

Based on the foregoing, it is hereby,

**ORDERED AND ADJUDGED** that the Defendant's Motion for Final Summary Judgment is **DENIED** and that the Plaintiffs' Cross–Motion for Partial Summary Judgment is **GRANTED**. Pursuant to Local Rule 7.3(A), the parties shall have thirty (30) days from the date of this Order within which to file any motions for attorney fees and/or costs.

**DONE AND ORDERED.**